Good morning, and welcome to the Ninth Circuit. We've got a full calendar today. We'll call the cases in the order that they appear on the calendar. And without further ado, we'll call Carranza-Albarran v. Barr. I need counsel for that case. Are you ready? Good morning. May it please the court. My name is Irvin Gonzalez, and I'm the counsel representing the petitioner. This case is based on an adverse credibility finding by the I.J. of a pro se litigant who was in custody at the time. The Board of Immigration Appeals dismissed that appeal, saying that the judge was correct in her finding of adverse credibility. We believe that that was an improper finding in this case. Now, the standard for review here is for substantial evidence, but that doesn't give... An immigration judge doesn't give the Board of Immigration Appeals a blank check to insulate themselves as to whether or not the respondent in this case, petitioner here, was in fact credible or not. That's for sure. However, if we get right down to it, your client talked about these particular claims in the credible fear hearing, but then didn't put the info in the asylum application and didn't testify about it at all until he was asked about it several times and then confronted with the events. Isn't that true? That is true, Your Honor. Well, so then, if that's the truth, how do you differentiate this case from Zhang? Well, I differentiate it from Zhang for various reasons. First of all, in the Zhang case, Your Honor, he was represented... Zhang was represented by counsel. So? Zhang's counsel, after asking Zhang on four occasions at least as to, did anything else happen to you in this event, in the event that they were talking about was a custody event, where Zhang, when first interrogated... But isn't that exactly what happened here, Counselor? He didn't say a thing about it until didn't have counsel, but the IJ, according to prompt, said, Come on, aren't you gonna tell me about this? Now, I didn't say it that way, but prompted several times and confronted several times and nothing. That would not seem like it was a big deal to your client. Well, Judge, the reason, again, it's also different, I believe, is if we look at what the IJ said at the master hearing on July 16th, which is the appellate record, page 94, specifically lines 5 to 6, when my client is handed the asylum application to fill in and to hand in, the judge specifically said, and I quote, The officer will give you the application for asylum, the form I-589. Complete the form as best as possible. The judge never said it had to be detailed. The judge never said anything. This is a pro se litigant. Yet the judge, after that, went on to say in detail about the attachments that had to be translated into the English language. But didn't the I... But just a minute, didn't the IJ ask him if he was helped to fill out this application? Absolutely, Judge, and he answered yes. And didn't he assert that he did? They did? Yes. And then the IJ pointed out that no one filled out the prepare portion of the form? That is correct, Judge, and he explained, this is a gentleman that was in custody, was not represented, had someone that he spoke to, that he told what had happened to him, fill out an application for him. Did he have a translator during any of this? He had a translator at the court, Judge. I don't know that he had a translator because that wasn't in the record in the custody facility where he, in fact, spoke to someone. Does he have a problem understanding English? Because I was confused by the record where he seemed to understand a fair bit about what was going on, and I kind of came in with an excuse about, well, I'm not sure if I really understood your directions. Well, he doesn't understand English. There was a translator in the court, Your Honor. The court always provides a translator, and there was a translator in the Spanish language. Oh, so he doesn't understand English? No, he doesn't, Judge. In fact, at the very beginning of the proceedings, the very first time that he appeared before Judge Munoz, it was asked, he was there with a group of, I believe, 10 other individuals, and each one was asked, do you understand English? Do you need the services of an interpreter? The petitioner herein said that he needed the services of an interpreter. Now, Judge Smith, to go back to what you were saying, yes, that is correct. Nobody signed the application. But the judge also must realize that if this gentleman needs an interpreter, this gentleman doesn't speak English, how does an asylum application, how does a statement attached to that asylum application all of a sudden appear in the English language? He couldn't write it, so somebody obviously did help him. She made a lot of this in trying to show that there was adverse credibility again by saying, well, you're supposed to put... Well, what she was just saying was, here's what I have in front of me. We have some events which were supposed to have happened. The client absolutely said that it happened at the credible fear hearing, but now when we get to the info in the asylum application, when we get to the testimony, the petitioner doesn't say anything, doesn't say anything until I have to prompt the petitioner several times, and then I have to confront the petitioner about the events. And even then, not very much, does the petitioner say. And then we go to the application and he says, and the petitioner says, somebody helped me, but then there's nothing there that says anybody helped. And then they say, well, this seems like it'd be a credibility finding. Well, judge... And so therefore, I say to myself, why isn't Jang right on? I don't believe it is. I believe Lay, which happened about three months afterwards... Well, Lay is not about the petitioner. Lay is about third parties. It's about the court rejecting the IJ's conclusions, noting the information, and I quote, concerned events and adverse consequences for third parties, not the petitioner himself. So Lay is not on point. Lay is about other parties. Right on point is Jang, about the party. Now, it was only one circumstance in Jang, and there's three or four here, which is there's three or four circumstances in which he testified, even as you say, upon prodding, but upon being asked by the IJ or the government, he testified. And if we look at what he testified to before the asylum officer at his credible fear interview, where he, in fact, was found credible, each and every one of the events was spoken about. Each and every one of the events was spoken about in the same fashion. There's been courts, this circuit has held, that omissions alone are less probative of a credibility, of credibility and consistencies, and that's what's happened here. What is my standard of review? Judge, your standard of review in this case is for substantial evidence. And I have to have a different conclusion is compelled. That's what I have to find. Correct. And what you're really saying is that your client can go in front, may go in front of a credible, in a credible fear application, or a hearing and say one thing, then gets to the asylum application. It's supposed to be a big deal, but never say anything about it. Then go to the hearing, again, supposed to be a big deal, and never say anything about it until prompted three or four times, and yet it compels me to say that the IJ and the BIA were wrong. That's what you're asking. Yes, I am, Your Honor, because... Why? On a compelling circumstance. Because the IJ did not give any cogent reasons for her finding. I just told you about those reasons. Judge, the IJ made a lot to do about he not having... One of the instances was about being sexually abused by his brother, or being abused by his brother. The IJ went into that and said, I don't buy what you're saying. I don't buy the fact that you're embarrassed by it. But yet, if we look at the testimony that he gave to the asylum officer, that testimony specifically says that the petitioner asked the asylum officer, is this confidential? Is anybody else going to know about this? This is something that I feel like I sinned. So the IJ looks at discrepancies that there may possibly be, or omissions, when it comes to the asylum officer's findings. Yet, in something like this, she just circumstantially says, that's not a problem. I believe you're lying because you should have told us that. Same thing with the incident with the boys when he was 10 years old, or younger than that, Your Honor. He didn't testify about it initially, because nothing happened except for being put in that circle and told to commit certain sexual acts with these young boys. But nothing ever happened of it. But he did detail it to the asylum officer. And again, every time that the judge pressed him, and I know he pressed him, but it was a pro se litigant. He testified. Everything was truthful. Everything was the same exact testimony that he gave at his asylum interview as the one that he gave at the time. I was just going to say, your time is almost up. Why don't we pause there? We'll give you some time for rebuttal. Let's hear from the government. Good morning, Your Honors. May it please the court. I'm Carmel Morgan on behalf of the respondent, the US Attorney General. We ask that you deny the petition for review, because substantial evidence does support the agency's adverse credibility determination. The agency, in this case, relied on three omissions. And this court has said repeatedly that omissions can form the basis, a valid basis, for an adverse credibility determination. But counsel, don't those omissions have to be relevant and material to the application? They really don't. The Real ID Act was changed such that any time a petitioner has an inconsistency. Well, an inconsistency is different than an omission, isn't it? Yes. But is your position that even if these are trivial omissions, that you can still uphold it based on this? I wouldn't say that's the position, because we don't have to take that position here. They're not trivial omissions. Of the three omissions, I think by far the most important one is that he did not mention the rape by the police officers, either in the asylum application or initially. Well, I thought he did mention it in the asylum application. I mean, didn't he say? I thought in the asylum application he at least referenced that that had happened to him, that there was... He said, in my misunderstanding that this was in the asylum application, he says, being a gay gentleman in my country is very difficult to establish life with freedom, dignity, and honor. We suffer a homophobic attack. Discrimination turned to hate crime, to violence and killing, with that we cannot get any relief or help from the police as my... And then he goes on to say, as myself suffered during the time I was living in Mexico. Isn't that enough to suggest that he... Suggested that he had been raped by police officers? No, Your Honor, it's not. The asylum application asks for detail. He provides no detail. No, there's not a date, there's not a by whom, there's not a where, there's not a when. Is that what's required? If you don't include a date or who did... Well, he does include a who. He says it happened by police officers. You're saying he doesn't know the name of the police officers who raped him? No, no, no, I don't think he says anything happened to him because of police officers. He's speaking only very generally about country conditions in Mexico. The only thing he says that's specific at all is as myself suffered, but that refers to I don't know what. Well, why wouldn't you assume that that refers to the extortion, rape and assault of LGBT individuals by the police, which is the prior sentence? I don't think it says anything about rape in the prior sentence. Well, let's read it together. Because they will extort, rape, assault. I see, you're saying it's two sentences before. But why wouldn't it reference that information? It's just not specific in detail. And so that's what you're relying on. But I guess that goes to what kind of what kind of reliance we need to give to these individuals who, by all accounts, apparently he he doesn't even speak English at all. He comes in with this preparation or the statement that he's prepared. He writes this down. What's our standard in reviewing that? It seems to me we we should be fairly gracious in looking at whether somebody made that statement in their application as we review it. If it's such a dramatic and pivotal event as this rape would seem to be, I don't think it's unreasonable to expect him to mention it in the asylum application, nor would it be unreasonable to expect him to mention it in the direct testimony. But again, he didn't do that until he was prompted. He did, though, right? That's what I guess. Eventually, he was asked repeatedly. Hang on a second. Just just remind me, he did not have a lawyer at the merits hearing, right? That is correct. So what what I mean, direct testimony in that context doesn't have the same meaning it does when you have your own lawyer examining you. Is that fair? Well, the immigration judge jumped in and asked him. I counted 14 different times about what happened to him in Mexico and why he was afraid. And and then I'm just looking at page 111. He's asked. She's asked. The judge asked him, and is there any other reason that you do not want to return to Mexico? And he says, because I was raped by the police. And six times before that, he was asked about problems in Mexico. And I have twice before that. He said, that's it. He didn't have any other problems. They could have stopped the hearing there when he said, that's it. He didn't have other problems. So he was asked. So you think he made this up? He made this whole incident up, even though he said this to the asylum officer at the very first contact. Do I think that? Well, that's the inference that the IJ is drawing from this omission, the supposed omission. And I guess I don't find that to be a supportable inference to draw. I'm not sure if that's the inference the immigration judge is drawing. I think the problem is, what do you do when you have an asylum application that mentions no specific incidents at all? And when you ask at the hearing about problems, this information is not quickly forthcoming. I think it does raise credibility concerns. Because the assumption is that he has made up this incident, even though he said this to the asylum officer from the get go. And I guess at the hearing, he's now having trouble reconstructing his, you know, his made up tale. Is that the idea? I think it raises concerns. And you don't know what to believe is true. Let me ask you a little bit about the schoolboys. When they were talking about the IJ did not specifically address the explanation with regard to the schoolboys, it doesn't seem like they did. All the IJ did is saying what it was. The client suggested that he didn't think he needed to address the issue because a friend intervened and he didn't perform the oral sex on the schoolboys. The IJ said, just repeated what Correnza had said, where does the IJ or the BIA give us the specific and cogent reasons for rejecting the explanation? Well, I'm going to look at page 42 of the IJ's decision, or page 42 of the record. Yeah, let's do that. Because I looked all over to try to find how they provided the specific and cogent reasons. I think what the IJ is saying here is that she asked repeatedly about problems in Mexico and this was not mentioned until it was raised by the immigration judge herself. There's no question the IJ says at no time, and I'm reading now, during his testimony before the court that he mentioned this threat or abuse or his attempt to reconcile his omission before he was performed an oral sex on these individuals. But there's no reason given why that explanation is wrong or why it's not cogent or why it's not available. I think the implication is because it wasn't mentioned when he was asked about problems he experienced. Okay. Well, the IJ just did a terrible job conducting this hearing, frankly, because at that particular incident, part of the transcript in particular, rather than give him an opportunity to explain, the IJ just misstated what he told the asylum officer. And he was merely trying to correct the IJ's misunderstanding of what he had said and then the IJ immediately just moved on. So he was never given an opportunity to explain that supposed inconsistency or omission at all. That's how I read the record. Well, I thought his explanation was that he didn't mention it because he didn't consider it, I guess, a threat or a significant incident. That's accurate, isn't it? I mean, nothing was done. I mean, there's no context. I mean, it could have been traumatic to a kid, but nothing was actually ever done. And it's not clear that it would satisfy as a form of torture. So why would he think to mention it? I think you could see it as a reasonable explanation. It's whether you're compelled to see it that way under the deferential standard of review. Even if you don't rely on that one particular omission, though, the government's position is that the other omissions are strong enough. I understand that. It just seems like there's problems with each of them. And real quickly, we're running out of time here. But I'd like to address the, he said he was ashamed on part of it, specifically regarding the abuse he suffered from his brother. That strikes me as reasonable. And so I'm wondering why we would, I mean, how do I approach that? Do I say, no, I've got to discount that when he comes back with something that seems very credible for why he might not have mentioned that? I think it could be construed as reasonable. I think the IJ also could construe it as she did, where he did reveal that information to the asylum officer. And he did, to her, discuss some other very personal events regarding sexual abuse by the police officers. And so she felt if he was willing to discuss those with the asylum officer and with her earlier, it didn't make sense to her that excuse. But again, it's whether the record compels the conclusion that he's credible there. And even discounting that, as I said initially, I think the strongest omission is the one where he didn't discuss the rape initially in his testimony and left it out completely from the asylum application. Thank you, Counsel. Let's give you a minute for a rebuttal. Thank you, Your Honor. Very quickly, just to summarize this, this IJ particularly told this person, prepare this asylum application as best as possible. And that's what he did. He prepared an asylum application as best as he possibly could. Judge Nelson, to answer your question as to what happened with the asylum officer, that exchange specifically, which is at the appellate record, page 30, petitioner provides, even though my family now accepts me, but I have never told anybody about this, but I feel like I am suffering from some mortal sin, but my oldest brother would abuse me, but he would tell me that was normal. Is this confidential, he asked the officer. The asylum officer says, yes, it is. And then he says again, yes, he would abuse me, but he is now dead. The judge didn't take that into consideration anywhere in her ruling and the decision, nor did the Board of Immigration Appeals. And this is, I think, very important because this is one of the most important reasons that they are saying that he is not credible witness. Okay. Thank you very much. Case just argued as submitted.
judges: N.R. Smith, Watford, R. Nelson